and his people versus McNeese. Council, whenever you're ready, you may proceed. Thank you. May it please the court, I'm Robert Burke with the Office of the State Appellate Defender. I represent the defendant Del Shannon McNeese. We're asking this court to remand the case for a new trial. Mr. McNeese stabbed and killed his best friend, Andrew Haynes, and he admitted it that he stabbed and killed his best friend, Andrew Haynes. Apparently the wound, it was apopheny, wound went through the chest without striking a bone, went through the pericardial sac and cut the large vein, pulmonary vein, between the lungs and the heart. That caused the pericardial sac to fill up with blood. Mr. Haynes didn't bleed to death. The blood squeezed his I had never heard of such a thing, but it happened in this case. The entire case for the juror really in one way or another revolved around justification. If Mr. McNeese was justified, if he was acting in self-defense, then he was not guilty. If he was not justified, but he didn't intend to kill Mr. Haynes, he was just acting recklessly, he was guilty of involuntary manslaughter. If he was not justified, but he intentionally or knowingly killed Mr. Hankin, then he was guilty of first degree murder. If he was not justified, intentionally killed Mr. Hankin, but he had an unreasonable belief that he was justified, he was guilty of second degree murder. Justification was what this case was about for the jury. With the court's indulgence, I want to tell a very short story that will illustrate a point. In 1994, I served on the federal criminal jury in Benton. The judge, Bill Gilbert, knew me, his first trial as a judge, his first jury trial as a judge in Williamson County, was my first jury trial as a public defender in Williamson County. And he asked me, Mr. Burke, do you promise to be fair and do you promise that you won't use your knowledge about the inside of the law to sway the jury longer? And I said, I promise, and I got on the jury. The federal prosecutors had used their last clip for challenge just before my forbear began. The jury, in some ways, is what you might fear for a jury. For instance, every time the judge said disregard that remark, the next break, that's what the jury wanted to talk about. But, in one way, the jury was everything you could hope for. They listened very carefully to the instructions. And when we went to the jury room, they read those instructions. They read those instructions out loud and passed those instructions around. Those instructions were the written word like the Bible. And, ultimately, it came down to one instruction. And they re-read that out loud and debated it, discussed it, and re-read it again. And that one instruction is how they reached their verdict. In talking with Judge Gilbert afterwards, he said that was the one jury instruction that was at the heart of the case. That the lawyers that argued about it had gone up to the Seventh Circuit on appeal, come back, and gave the jury instruction. And that's the one that the jury focused on. In this case, there's no jury instruction you can look at that says that is the jury instruction which led this jury through the maze of how to decide this case, how to apply the law to the facts of this case. One of those jury instructions that there's a problem with is based on 7.08. And that's where the jury's instructed what the state has to prove on involuntary manslaughter. It has to be in a case like this, it has to be modified by 24-25.06, which is the proposition the state has to prove beyond a reasonable doubt that there was lack of justification. And there was no objection to the state's IPI number 5, or instruction number 5. Is that right? That is correct, Your Honor. So we have to look for an exception to waiver, don't we? That is correct, Your Honor. And you think that's there? Yes, Your Honor. This is a case that I believe under the facts of this case, the jury could have come back with a verdict of not guilty. Under the facts of this case, I mean, how do you know, how do you intend that you're going to puncture the pericardial sac and slice the pulmonary vein and that somebody's heart is going to be squeezed until it stops beating? That was just an It was a reckless act, but he did not intend to kill his best friend. I don't believe. And the jury could have voted for involuntary manslaughter. The jury voted for second-degree murder, which I believe was a compromised verdict. What is the least thing that you can vote for? Involuntary manslaughter. What is the greatest thing you can vote for? First-degree murder. This obviously was not a first-degree murder case. Did the defendant tender instructions that gave the trial court an Your Honor, this is so vague in every way that no tender improper instructions, no objection to the improper instructions as far as the instructions went. At one point in time, the defense counsel said, I believe that's the wrong instruction. She was correct. And then she was argued out of her position and gave up. And that was on the question of what it should be 2.01i, which is the instruction for first-degree, second-degree and involuntary manslaughter, or what should be the instruction for 2.01j, which is the instruction for first-degree, second-degree, involuntary manslaughter and some other offense. Now the thing about j is you can't say there's a not guilty verdict because they're similar offense. Well, they took 2.01j, modified it to take out the language about the other offense, so it should have been 2.01i, and then modified it in such a way that they said to the jury, you will be given four verdict forms, not guilty of first-degree murder, which it should have said not guilty, guilty of first-degree murder, guilty of second-degree murder, guilty of involuntary manslaughter. They didn't tell the jury. Now the defense attorney was right. It should have been 2.01i, and the state actually did tender 26.01i, the companion instruction, instead of 26.01j, the companion instruction to what they actually tendered. I don't know why. I think the attorneys were confused. The defense attorney certainly became confused. I believe that the trial judge did his best with this case, but he only had so much he could work with, and the confusion went from the attorneys to the jury. The jury had no more guidance than the attorneys did, and the attorneys had very little guidance. I don't know why they picked bad jury instructions, but they did, and the jury was left without proper guidance, and because it goes to the integrity of the judicial system, and because this was a close case on the question of justification, and I believe that that's plain error, and that's why it should be reversed and sit back for a new trial with proper jury instructions. Thank you, Your Honor. Thank you, Counsel. Counsel? Good morning, Your Honor. May it please the Court and the Counsel? I agree with Mr. Burke in one by the prosecutor. When you look at 2.01i and 2.01j, 2.01j is captioned as when there are other charges, and I think that there really were no other charges in this case. There's only first degree murder. It's the only charge defense. The other ones that the jury's instructed on were mitigated versions of basically the same acts, so I think that's where the confusion came about, because I think the prosecutor may have seen this as other charges, so I don't think there was any bad intent here. So if you were on the jury, and you were not convinced that he was guilty of first degree murder, what do you think you could do with that? Well, and here's the thing. I'll grant you that by giving 2.01j rather than i, which only states that not guilty for a first degree murder is an error, but as in any error, in a particular instance where we're dealing with a plain error situation here, and there appears to be an acknowledgement and agreement in that part, you have to look at the jury instructions as a whole, and I do think what's most important here is, number one, although there's been a lot of kind of speculative argument here about what the jury might or might not have done, what we do know going into these types of cases, because we don't know what's going on in the jury room, we're not allowed to know, is that there is a presumption that the jury will follow the instructions as they are given. Now, what happened in this case is that the defendant admits that the jury was given a jury instruction of 7.06y, which is the companion issues instruction that goes with 2.01i. When you look at that instruction, I describe it in my brief as sort of a cascade of considerations for the jury. It's a self-defense case. This is how this went to the jury, and the jury has to initially determine whether or not the state disproved, along with the elements of first degree murder, whether the state disproved self-defense. If it found that it did disprove self-defense, then it had to proceed then to a second degree murder consideration. So it's going to either be a first degree or second degree murder verdict after, once the jury found the state had met the elements. And this instruction lays out sequentially what the jury is supposed to do. If it finds that the state did not meet the elements of the offense, then it must proceed to an involuntary manslaughter instruction. There's no argument here with regards to that except as it relates to argument two, and I'll get to that in a moment. If those elements are not met, then the jury must acquit the defendant. So this is not a case where the jury is not given the option to acquit. Acquittal comes after the jury goes through, I would call, the cascade of different offenses before it then gets to the end. So, you know, you could do this like a flow chart, if you will, but the end result will be if the state doesn't meet its elements of proof, the defendant will be acquitted. So while I agree that this instruction was not proper with regards to 2.01J, I think you can look at the instructions in their own right also that the sum total of these things would indicate that the jury was not confused and that it did have the option to acquit the defendant in these particular circumstances. Certainly if there were instances, legitimate instances, that the jury was not given the opportunity to acquit the defendant, there's no doubt between here and I think that there's an abundance of cases on that. But this is not that type of situation. What happened here was simply, I think, a momentary mistake by the prosecutor, but I do think that the balance of the proper instructions subsumed any problem that might be inherent in giving 2.01J. I do want to address the defendant's second argument as well, because I do think he makes a good point there as well, in that it is a requirement that the jury be given the self-defense instruction as it relates to all of the charged offensive workers in this individual case. Obviously, involuntary manslaughter. I'm sorry, charged, I only use those words loosely. Offenses to the jury's consideration. While that could possibly become error, again, we're in a plain error analysis here. This is a situation where the jury doesn't even get the involuntary manslaughter and hence the corresponding self-defense consideration until it gets past the murder one and murder two propositions. Here, the jury found, the state had proven, beyond a reasonable doubt, that there was not self-defense. They had to have found it. They could not have found that had it not gotten to the second-degree murder instruction. So, in that instance, I would argue that the absence of that instruction was not, the absence of that instruction was not an indication that the jury was following instructions as they're told to. Would it even become a consideration for the jury? There's no indication in this record that the jury convinced any sort of confusion. There wasn't an instance where a note went back and said, Judge, 2.01, you know, but they don't look at the number. But we have this instruction that says, you know, not guilty for second-degree murder. Then we've got these instructions which have this and that. There's no indication of that. I think it would be error for this court to make that presumption. I don't recall. Were there questions from the jury to the judge? I don't remember if there are other questions to be asked, but I don't, my notes don't reflect any questions as it relates to the instructions. I think I can say that in confidence. Your Honor, do you have any comments? Your Honor, before I was a policy, as an early lawyer for the court, I've been asked about jury instructions 26.01. And I said there's a challenge to that, but it takes the right case. This was not the right case. I'm ready to challenge that one. I think that instruction by itself is confusing. How do you proceed? But in this case, everything that they say in one instruction is different in a different instruction. So that's a problem when you look at the jury instructions as a whole. I also want to say I've studied some on plain error, and it seems to me that it's essentially the same test as ineffective assistance of counsel. Can you say, do you have confidence that but for that error, the jury instruction or the verdict would have been the same? But for that error, might the verdict have been different? And I think in this case, that but for that error, the jury verdict might have been different. Thank you, Your Honor. Thank you, counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement.